56

United States District Court
For The Southern District of Texas
Brownsville Division

FEB 19 2002

Michael N. Milby
Clerk of Court

Thomas Titus Tory
Plaintiff

V.     Civil Action B-00-051

Wackenhut Corr. Corp.,
Warden David Forrest,
R. Escamilla, Corr. Off.,
Defendants

## Plaintiff's Response To Defendants Motion For Summary Judgement

Comes now Plaintiff Thomas Titus Tory and presents to this Court his response to Defendants Motion For Summary Judgement pursuant to FRCP 56(e) and would show the following.

## Summary of Evidence

Exhibit A: Wackenhut Correctional Officers Job Duties and Responsibilities.

Exhibit B: Wackenhut Rack-time policy.

Exhibit C: Plaintiffs' medical Records.

Exhibit D: Weapon Used in assault/attack.

Exhibit E: Plaintiffs pictures after assault.

Exhibit F: Affidavit Of Plaintiff.

## Statement Of Facts

Defendants seek Summary Judgement / and or motion to dismiss Plaintiff's Eighth Amendment claim of Deliberate Indifference to his safety, and offers the following basis for their motion.

1. Failure To Exhaust Administrative Remedies.
2. Plaintiff's Claims of Deliberate Indifferent are not cognizable under 42 U.S.C. 1983
3. Plaintiff cannot maintain claim against Wackenhut Corrections or Warden David Forrest as Respondeat Superior.
4. Plaintiff has not sustained any damages that are recoverable under 1983.

## Argument and Authorities

1. Plaintiff asserts he has in fact exhausted step 1 and 2 of T.D.C.J. grievance procedure on Nov. 9, 1999, grievance #2000015781. Copies were provided with 1983 Form as required by 42 U.S.C. 1983, 1997e(a).

Plaintiff also offers the 1987 Fifth Circuit case of Robert Rocky 813 F.2d 734, in which the U.S. Court of Appeals reversed and remanded petitioner's case when the District Court dismissed his 1983 action for failure to exhaust administrative remedies through the unit grievance procedure, id 735, and stated "we conclude that the District Court erred in dismissing Rocky's suit without considering whether Rocky had reasonably and in good faith pursued his administrative remedies. The record before us shows that Rocky at least initially, promptly attempted to secure relief from the prison authorities."

2. Plaintiff asserts his claim of deliberate indifference is cognizable under 42 U.S.C. 1983, and according to the Supreme Court's case of Farmer v. Brennan, 114 S.ct. 1970, the Court held that a prison official may be held liable under the eighth amendment

for acting with deliberate indifference to an inmate's health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.

The amendment also imposes duties on those officials who must provide humane conditions of confinement; prison officials must ensure that inmates recieve adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates" Hudson V. Palmer 104 S.ct. 3194, id 1976.

The evidence i.e., pictures of plaintiff's injuries, medical reports, weapon, and the dorm monitoring video clearly reveals officer R. Escamilla's awareness that I faced substantial risk of serious harm, but he failed to take reasonable measures to prevent it.

3. Plaintiff asserts he was transferred from the Willacy Gate Jail one (1) week after his assault and he has been unable to contact inmate witnesses who'll provide evidence/affidavits that Wackenhut and Warden Forrest allowed injuries and harm to inmates through gang assaults, racial riots, and fights through intentional neglect of policy.

Plaintiff has requested through discovery records of gang assaults, racial riots, and fights, however Defendant has refused to comply.

4. Defendant alleges plaintiff has not sustained any injuries/damages that are recoverable under 1983. However, this allegation conflicts

3.

facts made by defendant in his Motion For Summary Judgement "I recieved stiches immediately after the incidents and first aid from the medical dept." see p.13 (Defendant's Motion For Summary Judgement.

In the U.S. Court of Appeals case of Siglar V. Hightower, Judge Parker held: (1) Under Prison Litigation Reform Act (PLRA) which requires prisoner to make a showing of physical injury before bringing any Federal Civil Action, injury must be more than de minimis, but need not be significant.

## Conclusion

Plaintiff believes he has shown specif facts that there is a genuine issue that warrants trial. Wherefore premises considered Plaintiff Thomas Titus Tory, prays this Court grant his Response To Defendant's Motion For Summary Judgement, Bench warrant him for trial, and allow him to redress his civil rights violation as he is constitutionally entitled.

## Certificate of Service

I, Thomas Titus Tory, being presently incarcerated at the Jester III unit of TDCJ, declare under the penalty of perjury that the foregoing is true and correct.

Executed on February 11, 2002.

Thomas Titus Tory
TDCJ # 378779
Jester III
Richmond, Texas 77469

4.

United States District Court
For The Southern District of Texas
Brownsville Division

Thomas Titus Tory,
Plaintiff

V.                                              Civil Action B-00-051

Wackenhut Corr. Corp.,
Warden David Forrest,
R. Escamilla Correc. Off.,
Defendants

## Affidavit of Thomas Titus Tory

1. My name is Thomas Titus Tory. I am over 21 years of age, of sound mind, and capable of making this affidavit.

2. I am currently an inmate assigned to the Jester III unit of TDCJ.

3. On September 20, 1999, I was assigned to the Willacy State Jail, and at 1:00 am I was attacked/assaulted while asleep in bed by Jessee Lopez TDCJ #851446 and nine (9) other hispanic gang members.

4. The weapon used in the attack were a can of mackeral fish, which I recieved severe injuries to the head i.e. laceration, fractured skull, and had to have my head stiched back together by the unit's infirmary. See attached exhibits C,D (can used in attack, unit's infirmary medical reports).

5. The Willacy State Jail has a rack time policy of 10:30 pm, in which no inmate is allowed out of their beds except to use the restroom. See attached exhibit B (rack time policy).

6. At the time during the attack/assault, no Willacy officials tried to prevent the assault or harm from being inflicted on me, so several african americans inmates came to assist me, which the two groups began rioting.

7. Upon reviewing the dorm monitoring video, it was revealed that officer R. Escamilla who was assigned to 3-housing control picket opened the door and allowed inmates from 3-A to participate in the assault on me in 3-C dorm.

8. Officer R. Escamilla was allowed to resign two days after the incident; and I was given a disciplinary case for rioting in an attempt to cover-up officer R. Escamilla's wrongdoing.

9. I have sought through discovery to acquire a copy of the dorm monitoring video which filmed the incident, and T.D.C.J. Use of Force Statements, which include witness names, pictures of the assault area, and the warden's PERS-185 Reprimand Form of officer R. Escamilla conducts; however the defendant's have refused to comply with my requests.

I Thomas Titus Tory being presently incarcerated at the Jester III unit of T.D.C.J. declare under the penalty of perjury the the foregoing is true and correct.

Executed on February 11, 02. Thomas Titus Tory



*Exhibit A*

## CORRECTIONAL OFFICER

| POSITION TITLE: Correctional Officer | JOB CODE: | EFF. DATE 06-01-95 |
|---|---|---|
| | ___ Executive Exemption | |
| | ___ Administrative Exemption | |
| DEPARTMENT: Security | ___ Professional Exemption | |
| | X Non-Exempt | |
| | ___ Supervisory | |
| | X Non-Supervisory | |
| | ___ Salary Position | |
| | X Hourly Position | |
| | X Full-Time Position | |
| | X Part-Time Position | |

**JOB TITLE OF SUPERVISOR: ASSISTANT SHIFT SUPERVISOR (SGT.)**

JOB SUMMARY:
Responsible for overall security of facility. This will include the counting of inmates, work supervision, housing supervision, and activity supervision. Responsible for maintaining schedules and rule adherence by inmates.

PRINCIPAL DUTIES/RESPONSIBILITIES:
- Assigned to supervise inmates and their designated tasks.
- Conduct inmate counts on a regular and irregular schedule.
- Supervise recreation, work, housing unit, hallway, medical and all other activity areas.
- Perform pat and strip searches for control of contraband.
- Report unusual activity.
- Assigned to mobile patrol and transportation when necessary.
- Conduct security inspections of equipment.
- Monitor visitation and recreation activities.
- Patrol assigned areas for evidence of forbidden activities, infraction of rules and unsatisfactory attitudes or adjustment of inmates.
- Write reports concerning incidents of inmate disturbances or injury.
- Perform a variety of marginal duties not listed, to be determined and assigned as needed.

0005

*"Rack-Time Policy"*

*Exhibit B*

F. Bunk area "lights out" occurs every night at 10:30 PM except Fridays, Saturdays and holidays. Offenders are not allowed out of their bunk after 10:30 P.M. lights out except to use the restroom.
*La hora de apagar las lucen en el area de tarimas occure cada noche a las 10:30 P.M. aparte de viernes, sabado y dias de fiesta. Los presos no son permetidos salir de sus tarima despues de que apagen las luces, con la excepcion de ir al bano.*

G. Rack-up occurs at 10:30PM except on nights preceding weekends and holidays. During these nights, rack-up will usually be at 1:00AM, but can be modified at the discretion of the shift supervisor. Televisions may remain on after 1:00 AM to finish a program being watched at the discretion of the Shift Supervisor.
*"Rack-up" o tiempo para acostarse se lleva acabo a las 10:30P.M. aparte de noches antes de fin de semana y dias de fiesta. Durante esta noches, "Rack-up" o mas del tiempo sera a las 1:00 A.M., pero puede modificarse al deseo del sobrestante encargado. Las televiciones pueden mantenerse Prendidas despues de la 1:00a.m. para acabar de ver algun prorama.*

0006

*Exhibit C*



# WACKENHUT CORRECTIONS
Design. Construction. Financing. Management.

## PROGRESS NOTES

**ALLERGIES:** NKDA   **SITE:** WILLACY

| DATE/TIME | Inmate Name: Tony, Thomas    # 378779    DOB: 1/14/55 |
|---|---|
| 7/20/99 1205 | wt 160    140/110    99    78    20 |
| | Laceration on ® temporal area of scalp 1" long. N fx skull. Neuro. N. |
| | A/ same |
| 9/20/99 Ted 1305P | P/ Fx of suturing of laceration done under LA c 10% xylocaine + Epinephrine. 6 sutures taken of 5-0 silk. |
| | 2) Keflex 500 T bid x 1 wk |
| | 3) Change dressing daily x 1 wk c Triple Anti. oint. |
| | 4) Remove sutures after 10 days — No pass — ad Seg    9/30 |
| | Verified orders in 9/20/99 @ 1500 |
| 9/20/99 0755 | WT 161  T 99° P 76  R 18  BP 154/104 |
| noted 9/20/99 | S. Laceration scalp sutured one wk ago. |
| | O/ can |
| 0805 | Sutures removed, wound on scalp has healed well |
| | 9-30-99 0852 verified R. Almanza RN |
| 10/12/99 | 2230 Chart prep for chain out. J Sahms RN |
| 10-13-99 | 0630 chain in from WT to NH / Meza out |
| 10/13/99 | 2200 Ch out NH to BX |

WCC 74470

Exhibit C



# PROGRESS NOTES

**ALLERGIES:** NKDA      **SITE:** WILLACY

| DATE/TIME | Inmate Name: Tory Thomas  # 378779   DOB: 1/14/55 |
|---|---|
| 8-6-99 | 1050 NSC 7273 - scalp irritation |
| | Wt 165  B/P 170/110  P 60  R 18  T 97⁸ |
| | S: Has dermatitis & scalp |
| | O: Dermatitis |
| | A: same |
| | Rx: tetracycline 250 [?] tid × 7 th, 30 d |
| | Valisone ointment .1%, Apply Bid. × 30 D × 3 |
| 8-6-99 | 1128 noted R. Almanza RN pass given Copy to pharmacy |
| 8-6-99 | 1155 Verified D. W[?] LVN |
| 8-21-99 | Transferred to McConnell Unit due to hurricane Bret |
| 8-23-99 | returned to Willacy unit c/700 [signature] |
| 9/9/99 0800 | Wt 165  140/90  92-4  76  18 |
| | S: Pt wants valisone scalp lotion instead of ointment for seborrheic [?] |
| | O: Has seborrheic dermatitis & scalp |
| | R: Valisone lotion Apply Bid × 30 D × 2 |
| 9-9-99 | 0818 noted R. Almanza RN pass not needed |
| Verified 9/9/99 | 0915 K [?] |
| 9-20-99 0300 | S) 44 y/o b male s/p assault... Offender states "I was asleep in bed when I was attacked, I think they hit my head with a can of jack mack." Denies LOC. c/o headache. c/o (R) rib pain states "I was kicked" |
| | O) VS 150/100  96.3  130  20  wt 163# Laceration 4cm linear to right parietal scalp area. Abd: No ecchymosis to (R) abdomen/rib area. No swelling. BS active, non-tender on palpation. (R) shin area - superficial abrasion No active bleeding. PERRLA. Alert conversive. Alert & oriented × 3. |
| | A) Alt skin integrity RT lac. to (R) parietal area s/p assault |
| | P) (1) wash/debride wd c̄ H₂O, betadine, shave wound (hair around wound) apply steri-strips × 6. Wound well approximated. |
| | (2) Schedule for MD appt evaluation today 9/20/99 |
| | (3) Injury report completed. [signature] |

WCC 74470

Exhibit D

can used in assault



Racial Disturbance

exhibit e



Tony Thomas
-78779
5C-62

Sgt R Longoria
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



Tony Thomas
78779
5-43

Sgt R Longoria
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